NATIONAL COLLEGE OF BUSINESS, Appellant
v.
PENNINGTON COUNTY et al., Respondents

(146 N.W.2d 731)

(File No. 10310. Opinion filed November 28, 1966)

**Bangs, McCullen, Butler & Foye, George A. Bangs** and **Robbert E. Driscoll,** Rapid City, for plaintiff and appellant.

**David F. Sieler,** State's Atty. for Pennington County, Rapid City, for defendants and respondents.

RENTTO, Presiding Judge.

In this litigation the plaintiff, a South Dakota Corporation privately owned and operated for a profit, sought a judgment declaring that certain described real and personal property owned by it in Rapid City, South Dakota, was exempt from taxation because it was used exclusively for educational purposes. Initially involved are the taxes for the year 1964. From an adverse judgment entered October 11, 1965 it appeals.

Plaintiff offers accredited diploma courses in business administration, accounting, secretarial and stenographic study and is authorized to award degrees. The minimum time required for the completion of these various courses varies from 96 weeks to 24 weeks depending on the field chosen. These courses are similar to and the equivalent of courses taught in our tax supported institutions, to the extent that in many courses the same text books are used. In addition to specialized training in the various fields of business education other subjects are taught including penmanship, English, composition, public speaking, business law, mathematics and economics. It is accredited by the Accrediting Commission for Business Schools which has been designated as a nationally accrediting agency of the U. S. Office of Education.

It accepts as students only high school graduates or those who can establish the equivalent thereof by examination, and minimum levels of academic achievement are prescribed. All students are required to take a standard Business Career Aptitude Test, the results of which are utilized in their counseling and instruction. The college is in session Monday through Friday, with the exception of legal holidays, from 8 a. m. to 3 p. m. It has an enrollment of about 500 students at its regular terms and about 250 at its summer terms. The faculty is composed of both full-time and part-time instructors, most of whom possess bachelor and master degrees or have received other specialized training in their fields. Curricular and extra-curricular activities are encouraged, including those of a social and recreational nature, and dormitory facilities are maintained by the college. It also provides a placement service for its students.

Plaintiff is not accredited by the North Central Association, a nongovernmental body organized by colleges and universities in this and other states of this region for the purpose of accrediting such institutions, because plaintiff is organized for profit. All the tax supported colleges and universities of our state appear to be accredited by this Association. It is inferable from the record that to maintain such accreditation they may not accept credits from an institution not accredited by that Association. However, many of them have the policy of permitting students from a nonaccredited school to take their examination in a course which he has pursued at such school, and if he passes, his credit for the course is accepted. This is referred to as challenging courses.

Our Constitution prior to 1918 in Art. XI contained these provisions:

"§ 5. The property of the United States and of the state, county and municipal corporations, both real and personal, shall be exempt from taxation.

"§ 6. The legislature shall, by general law, exempt from taxation, property used exclusively for agricultural and horticultural societies, for school, religious, cemetery

and charitable purposes, and personal property to any amount not exceeding in value two hundred dollars for each individual liable to taxation.

"§ 7. All laws exempting property from taxation other than that enumerated in sections 5 and 6 of this article, shall be void."

By Ch. 161, Laws of 1917, the legislature submitted to the people a constitutional amendment concerning the matter of taxation. This was adopted in the general election of 1918 and appears now as Art. XI, § 2 of our Constitution. So far as here material it provides:

"the legislature is empowered to divide all property including moneys and credits as well as physical property into classes and to determine what class or classes of property shall be subject to taxation and what property, if any, shall not be subject to taxation."

In State ex rel. Eveland v. Johns, 43 S.D. 279, 178 N.W. 945; Dakota Lodge No. 1 v. Yankton County, 54 S.D. 402, 223 N.W. 330; Egan Independent Consolidated School Dist. No. 1 v. Minnehaha County, 65 S.D. 32, 270 N.W. 527, 108 A.L.R. 572, this court held that such amendment was inconsistent with and abrogated the last provision in Section 6 and all of 7. As a result of this constitutional change, the matter of classification and exemption from taxation was left to the legislature, subject of course to reasonableness of classification and uniformity within the class. Under this authority it could determine the class or classes of property to be exempted and such power is in no way limited by Sec. 6, Art. XI.

In 1927 the legislature reconsidered some of the exemptions from taxation then in effect. This resulted in the enactment of Ch. 46, Laws of 1927. Apparently these efforts were not entirely satisfactory so the next legislative session gave further study to the matter. It then enacted Ch. 243, Laws of 1929 relating to exemptions for property belonging to charitable, benevolent or religious societies and used exclusively for such purposes, and

Ch. 244 relating to the exemption of property belonging to educational institutions and property used exclusively by and for the support of such institutions.

This later enactment is the one with which we are here concerned. It now appears as SDC 57.0311(2). The exemption provided therein is for:

"All property, both real and personal, belonging to any educational institution in this state, and all property used exclusively by and for the support of such institution; but if any such property shall consist of farm lands or of improved town or city property not occupied or directly used in the carrying out of the primary object of the educational institution, owning the same, it shall be taxed the same as other property of the same class is taxed".

The first phrase thereof describes a class of property that is exempt from taxation. The legislature then indicates a clear intention by expressly providing that as to property owned by such institution, if it is improved city property as is the property here involved, it is taxed as other property of the same class if not occupied or directly used in carrying out the primary object of the institution. Obviously if it is so occupied or used it is exempt from taxation.

■ Exemption from taxation is based upon considerations of public policy and is given a reasonable, natural and practical construction to effectuate the purpose for which it is created. SDC 65.0202; State ex rel. Eveland v. Erickson, 44 S.D. 63, 182 N.W. 315, 13 A.L.R. 1189; C. A. Wagner Const. Co. v. City of Sioux Falls, 71 S.D. 587, 27 N.W.2d 916.

The court found, and it is not questioned, that all the property here involved was owned by plaintiff and used in furnishing the training which it provided. Consequently, the basic question we have presented is whether plaintiff is an educational institution within the meaning of that term in the statute. The trial court held that it was not because the credits for courses completed by a student at plaintiff's institution are not accepted and

given full faith by the tax supported colleges and universities of the state. We do not concur. The effect of such holding makes exemption from taxation dependent upon the rules and regulations of a private accrediting agency. This was not the legislative intent.

In construing statutes courts search for the legislative intent as shown by what the legislature said, rather than what it should or might have said. Boehrs v. Dewey County, 74 S.D. 75, 48 N.W.2d 831. Under this statute to merit exemption from taxation the legislature said that the entity involved must be an educational institution, but did not tell us what is an educational institution. In determining this we must view the term in the light of the object sought to be accomplished by the enactment.

The importance of education to the maintenance of our form of government and way of life was clear to the framers of the Constitution of this state. In Art. VIII, § 1 of our Constitution they declared:

> "The stability of a republican form of government depending on the morality and intelligence of the people, it shall be the duty of the legislature to establish and maintain a general and uniform system of public schools wherein tuition shall be without charge, and equally open to all; and to adopt all suitable means to secure to the people the advantages and opportunities of education."

In addition to requiring the maintenance of our public schools, by this provision it is also made the duty of the legislature "to adopt all suitable means to secure to the people the advantages and opportunities of education". The exemption statute we are considering in a measure carries out this duty by granting indirect financial aid to private educational institutions in return for their contribution to this essential undertaking. South Dakota Law Rev. Vol. 11, No. 1, p. 132 (Winter 1966). Without the facilities of our private educational institutions, including those of the plaintiff, the overcrowding in our tax supported institutions would be even worse than it now is.

■ ■ It is a matter of common knowledge that many of the subjects and much of the training provided by plaintiff is also provided in our tax supported institutions of higher learning and in some instances in our public high schools. To the extent that plaintiff's facilities are availed of, the state is relieved of its financial obligation to furnish such instruction. It seems to us that the statutory exemption from taxation provided for in SDC 57.0311(2) is available to those private institutions which provide at least some substantial part of the educational training which would otherwise be furnished by our tax supported schools. Coyne Electrical School v. Paschen, 12 Ill.2d 387, 146 N.E.2d 73. Accordingly, we hold that plaintiff is an educational institution within the meaning of our exemption statute.

■ That it is a business college rather than an institution offering a general educational program does not bar it from the benefits of the statute. Simpson v. Jones Business College, Fla.App., 113 So.2d 760; Birmingham Business College v. Whetstone, 263 Ala. 369, 82 So.2d 539; Wilson's Modern Business College v. King County, 4 Wash.2d 636, 104 P.2d 580.

■ The trial court concluded that the fact the plaintiff was operated for profit had no effect on the availability of exemption from taxation. In argument it is suggested that it did. We share the trial court's view. Pitcher v. Miss Wolcott Ass'n., 63 Colo. 294, 165 P. 608, L.R.A. 1917B, 1095; Rohrbaugh v. Douglas County, 76 Neb. 679, 107 N.W. 1000; Ward Seminary v. Nashville, 129 Tenn. 412, 167 S.W. 113; Board of Com'rs. of Tulsa County v. Tulsa Business College, 150 Okl. 197, 1 P.2d 351; Cox v. Dillingham, 199 Okl. 161, 184 P.2d 976; Graphic Arts Educational Foundation v. State, 240 Minn. 143, 59 N.W.2d 841. The benefit to the state is present whether the institution is operated for a profit or not.

■ The language of the exemption statute does not contain a qualification to that effect. To read such into it under the guise of construction would be a usurpation of the legislative function. In re Mountain State College, Inc., Assessment, 117 W.Va. 819, 188 S.E. 480. In this connection it should be noted that in Ch. 243, Laws of 1929, now SDC 57.0311(3), the legisla-

ture in granting exemption to benevolent societies did require that they be operated "without profit". This section was adopted by the same legislative session that gave us the exemption provision with which we are here concerned. Also, in Chapter 243 the legislature recognized that there were educational associations operating without profit, but included them in the exemption given to benevolent societies.

Generally, statutes exempting the property of educational institutions are included in or made a part of the statutory setup which includes the exemptions granted to charitable and benevolent groups. Some courts seize on this to hold, by construction, that the educational institutions intended to be aided by the statute must be of the same general character as charitable and benevolent organizations—that is, nonprofit in character. Typical of this view are Behnke-Walker Business College v. Multnomah County, 173 Or. 510, 146 P.2d 614; Lawrence Business College v. Bussing, 117 Kan. 436, 231 P. 1039.

■ However, under our statute, after it is determined that the institution involved is educational in character there is no room for further construction in this regard. Our legislature has taken care of the matter by directing that the exemption is available to "any" educational institution. It did not see fit to add any limitations or qualifications on the availability of the exemption. Since there is no ambiguity in the language used there is no occasion for construction. Kalmbach v. City of Mobridge, 81 S.D. 158, 132 N.W.2d 293.

■ Our holding is in accord with the administrative interpretation placed on this exemption by our Commissioner of Revenue. The Assessor's Handbooks issued by the Department of Revenue, Division of Taxation, since 1958 have advised the assessors that this exemption was available to educational institutions even though they were privately owned and conducted for profit. And further, that Business Colleges were seminaries of learning and as such in the exempt category. This construction by the Commissioner of Revenue the legislature is presumed to have known. John Hancock Mut. Life Ins. Co. v. Lookingbill, 218 Iowa 373, 253 N.W. 604. Apparently it did.

In the 1964 Legislative Session, Senate Bill No. 151 was introduced to amend SDC 57.0311(2). As introduced it defined the term educational institutions as any such institution approved and accredited by the Department of Public Instruction of the State of South Dakota. In committee this was deleted and an amendment substituted to define an educational institution as one not used or operated with the object of financial or pecuniary gain, profit or benefit, either direct or indirect. In the legislative process it was further amended to define an educational institution to mean any school or college operated by a religious or charitable institution or society, provided, however, that the same was operated on a nonprofit basis. The proposal was not enacted into law.

This action by the legislature seems to us significant. By failing to adopt the proposed amendments, or any others, limiting the type of educational institutions eligible for the exemption provided, the legislature indicated that it approved the construction placed on the statute by the administrative officer charged with the duty of construing such law. SDC 57.0101(16); SDC 1960 Supp. 57.01A05. In our consideration of this matter we have not been unmindful of the fact that the whole field of exemption of property from taxation is under review both in public discussion and legislative study, and that the propriety of exemptions such as this is being questioned. However, it is not for us to say what property should be exempt from taxation. That is a legislative function.

The legislature in Ch. 301, Laws of 1957, submitted to the electorate a proposal to amend Art. XI, Section 6 of our Constitution to read as follows:

"The legislature shall, by general law, exempt from taxation, property used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, property acquired and used exclusively for public highway purposes, and personal property to any amount not exceeding in value two hundred dollars for each individual liable to taxation."

At the general election in 1958 this proposal was adopted. Its language added to Section 6 the provision concerning land used for public highway purposes, but it did not reinstate Section 7 which this court had held was repealed by the 1918 amendment.

In our view this amendment does not diminish the powers bestowed on the legislature in Art. XI, Section 2 to determine "what class or classes of property shall be subject to taxation and what property, if any, shall not be subject to taxation" because it is not a self-executing provision. State ex rel. Linde v. Packard, 35 N.D. 298, 160 N.W. 150; International College of Surgeons v. Branza, 8 Ill.2d 141, 133 N.E.2d 269, 61 A.L.R.2d 1027. The only enactment by the legislature under the 1958 amendment is Ch. 439, Laws of 1961 exempting from taxation real property governmentally acquired and used exclusively for highway purposes. Consequently, SDC 57.0311(2) remains in full force and effect. State v. Bradford, 12 S.D. 207, 80 N.W. 143.

The judgment appealed from is reversed and the cause remanded with directions to enter a judgment in accordance herewith.

ROBERTS, BIEGELMEIER and HOMEYER, JJ., concur.

HANSON, J., dissents.

HANSON, Judge (dissenting).

In my opinion, a privately owned business school operated for private gain, like any other commercial concern, is not exempt from taxation in South Dakota.

Taxation of property is the rule and exemption is the rare exception. The implications arising from this rule are well expressed in 2 Cooley on Taxation (4th Ed.) Section 672, p. 1403: "An intention on the part of the legislature to grant an exemption from the taxing power of the state will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-settled principle that, when a

special privilege or exemption is claimed under a statute, charter or act of incorporation, it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation. Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption". Claimant failed to sustain that burden.

In order to enjoy the extraordinary privilege of tax exemption a school must come within the meaning of the term "educational institution" used in our tax exemption statute. Property belonging to educational institutions has been exempt from taxation in this state since 1897 and the statute granting the same should be construed in the light of its historical background and constitutional relationship. See Sec. 5, Ch. 28, Laws of 1897. Sections 5 and 6 of Art. XI, S.D.Const. authorizing specific tax exemptions class relates property used for school purposes with:

(1) Property of the United States, the state, counties, and municipalities,

(2) Property used exclusively for agricultural and horticultural societies, and

(3) Property used exclusively for religious, cemetery, and charitable purposes.

The common denominator of these specific exemptions is public ownership or use of property for a public purpose.

In Dakota Lodge No. 1, I.O.O.F. v. Yankton County, 56 S.D. 234, 228 N.W. 238, this court was concerned with the meaning of the word "benevolent" as it is used in our exemption statute. The court said "we must presume that the word was used in the same sense as it is used by the Legislature in other kindred statutes; not merely in statutes on the same subject, but in statutes on cognate subjects." Reference was then made to our statutes relating to "Religious, Educational, and Benevolent Corporations" from which the court concluded · that the word "benevolent" was not used synonymously with the word "charitable" in our exemption statute. Apropos to this case the court

concluded that "The meaning thus attached by the Legislature, through a long period of years, to the word 'benevolent', as used in designating the character of societies for the purpose of incorporation, cannot be ignored in endeavoring to ascertain the meaning attached to the use of the same word in designating the societies whose property shall be exempt from taxation". The same reasoning should apply in determining the meaning of the term "educational institutions" in our tax exemption statute.

It is provided in the chapter dealing with Educational Corporations that the articles of incorporation of an institution of learning must set forth, among other things, "the particular branch or branches of science, literature, and the arts proposed to be taught", SDC 11.1701 and such corporation "shall hold the property of the institution solely for the purposes of education and not for the individual benefit of itself or any contributor to the endowment thereof * * *". SDC 11.1703. From a historical standpoint and from its relationship to kindred statutory and constitutional provisions, tax exemption for educational institutions was intended to apply only to private schools which:

(1) offer a general course of study conforming to the standards and requirements of education imposed upon our publicly supported schools of comparable grade, and

(2) own and use their property and all income therefrom for educational purposes.

In denying tax exemption to a private school offering a course of study in the fields of electricity, radio, radar, and electronics, the Illinois court in Coyne Electrical School v. Paschen, 12 Ill.2d 387, 146 N.E.2d 73, pertinently stated "it is manifest that two things are necessary to qualify a private institution for tax exemption as a school: first, a course of study which fits into the general scheme of education founded by the State and supported by public taxation; second, a course of study which substantially lessens what would otherwise be a governmental function and obligation. In the case at bar there is neither a claim nor a showing that plaintiff's course of study fits into the

scheme of education offered by public schools. Neither is there a showing that the instruction given by plaintiff substantially lessens the burden of taxation occasioned by our public school system. Thus whether plaintiff's activities are measured by the restrictive meaning which has attached to the constitution and exempting statutes, or by the public gain which must inure before property is released from bearing its proportionate share of taxes as required by section 1 of article IX of the constitution, it is apparent that its claim to exemption must fail."

To hold otherwise allows a private business school exemption from taxation without the corresponding duty of utilizing its property and resources exclusively for educational purposes and without the burden of conforming to any regulatory educational standards or requirements. It, furthermore, discriminates against South Dakota educational corporations which must hold and use their property "solely for the purposes of education and not for the individual benefit of itself or any contributor."

This court has said "An exemption of this type is granted as a concession by government in return for unselfish ministrations to human welfare." South Dakota Sigma Chapter House Ass'n. For Refund of Taxes v. Clay County, 65 S.D. 559, 276 N.W. 258. This fundamental justification for tax exemption is totally lacking here.